IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Steven Hatley, et al.,
Plaintiffs,

  v.    Civil No. JFM-09-711

Walter Tuffy, et al.,
Defendants.

\*\*\*\*\*\*

MEMORANDUM

Plaintiffs Steven Hatley, Mohamed Ali, Brian Shaffer, and Valentine Nagovich were, at all times relevant to the Complaint, police officers and members of the Flex Squad of the Baltimore Police Department ("BPD"). In December 2008, Plaintiffs filed this suit in Circuit Court for Baltimore County against Defendants Walter Tuffy, Joseph Smith, Debbie Owens, John Hess, Scott Danielczyk, John Jendrek, Joann Wilson-Branch, Karen Hornig, Matt Jablow, Leonard Hamm, and Frederick Bealefeld for denial of procedural and substantive due process as they relate to Plaintiffs' employment with the BPD. Plaintiffs seek "declaratory judgments that the suspensions of their police powers and their suspension from performing police duties violate their civil rights; and injunctive relief to restrain any act of retaliation," (Compl. ¶ 1), as well as money damages (*id.* ¶ 2). Defendants removed the case, which contains both federal and state claims, to this Court on the basis of 28 U.S.C. § 1441, federal question jurisdiction. Now pending is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Defendants' Motion to Dismiss is granted.

**I.**    **Statement of Facts**

At this stage of the litigation, the factual allegations in Plaintiffs' Complaint must be accepted as true and those facts must be construed in the light most favorable to the Plaintiffs. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). According to Plaintiffs, the violations of their substantive and procedural due process rights, as well as the invasion of privacy claims, stem from two actions taken by Defendants: filing a false search warrant and filing false administrative disciplinary charges against Plaintiffs. (Compl. pp. 5, 24.)

**A. False Search Warrant**

On or about December 28, 2005, an individual named Dara Walker accused Officer Jemini Jones[1] of rape in the Flex Squad offices of the BPD. (*Id.* ¶ 25.) Immediately following the rape allegation, detectives of the Sex Crimes Unit of the BPD obtained a search warrant to collect evidence from the Flex Squad offices. (*Id.* ¶ 26.) Defendant Scott Danielczyk, a member of the Internal Investigations Division ("IID"), participated in the execution of that warrant, at the direction of Defendants Walter Tuffy and Joseph Smith, in their capacities as Chief and Deputy Chief of the IID. (*Id.* ¶¶ 24, 26.) The Sex Crimes Unit detectives conducted field tests of the physical evidence, interviewed the Plaintiffs about the alleged incident, and administered a S.A.F.E. Kit examination of Ms. Walker. (*Id.* ¶ 27.) According to Plaintiffs, the field examinations and S.A.F.E. Kit examination were both negative for corroborating evidence of rape and Ms. Walker made conflicting statements about the incident. (*Id.*) As a result, the Plaintiffs claim that the Sex Crimes Unit concluded that the rape accusations were false and reported their conclusions to their superiors and to Tuffy and Smith. (*Id.*)

Despite the conclusions of the Sex Crimes Unit, Plaintiffs allege that Tuffy and Smith ordered Defendants Danielczyk, John Hess, and John Jendrek to conduct a second search of the Flex Squad offices, though the offices had been searched a day prior. (*Id.* ¶ 28.) Plaintiffs

---
[1] Officer Jemini Jones is not a party to this suit.

contend that the second search was motivated by personal animus that Tuffy and Smith felt towards the Flex Squad, including Plaintiffs and their supervisor Robert Smith.[2] (*Id.* ¶¶ 48-52.) Plaintiffs allege that Danielczyk and Jendrek prepared a false affidavit in support of the application for the second search warrant. (*Id.* ¶ 34-40.) According to Plaintiffs, Tuffy and Smith ordered Danielczyk, Hess, and Jendrek to prepare a second search warrant application because they intended to leak the documents to the media, with the help of Defendant Matt Jablow, in order to humiliate Plaintiffs and the Flex Squad, generally. (*Id.* ¶ 29.) In support of this contention, Plaintiffs assert that a search warrant was not legally necessary to search the Flex Squad offices as there is no expectation of privacy in city-owned property. (*Id.*) Moreover, no member of the BPD was authorized to communicate the information contained in the search warrant application to the news media as the General Orders of the BPD expressly disallows such communications. (*Id.* ¶ 56.) Yet, on January 9th, WBALTV.COM reported that the Flex Squad was suspected of conducting criminal activity, according to search warrant applications and affidavits. (*Id.* ¶ 67.)

On December 28, 2005, Plaintiffs Hatley, Ali, and Shaffer, along with Officer Jemini Jones, were detained by police detectives at the Southwestern Police District Station and given Miranda warnings and advice of rights pursuant to the Maryland Law Enforcement Officer's Bill of Rights ("LEOBR"). (*Id.* ¶ 60.) The officers all waived their rights, were interrogated, and all denied involvement or knowledge of the rape allegations. (*Id.*) Plaintiff Nagovich was on vacation when the alleged rape occurred. (*Id.* ¶ 61.) Nagovich was suspended on December 29, 2005, however, because during the second search investigators found suspected marijuana in a jacket suspected to belong to him. (*Id.*) Hatley and Shaffer were suspended the same day and Ali was suspended the following week. (*Id.*)

---

[2] Officer Robert Smith is not a party to this suit.

3

On or about January 5, 2006, the State of Maryland filed indictments arising out of the alleged rape incident. Plaintiffs Hatley and Shaffer were each indicted on one count of first degree rape and three counts of misconduct in office. (*Id.* ¶ 62.) The indictments were under seal and not open for public inspection. (*Id.*) On January 6th, however, the media obtained confidential and non-public information about the indictments. (*Id.* ¶ 63.) Plaintiffs contend that Defendants Jablow, Hamm, Tuffy, and Smith were responsible for leaking this information. (*Id.*) On January 6th, the same day the arrest warrants were issued, Jemini Jones surrendered. (*Id.* ¶ 64.) This was reported on WBALTV.COM the following day. (*Id.*) Shaffer and Hatley surrendered on January 9, 2006 and were suspended the same day. (*Id.* ¶ 66.) More than one year later, on January 24, 2007, Jones was acquitted by a jury after a two-week trial. (*Id.* ¶ 70.) Two days later, the State's Attorney dropped all charges against Shaffer and Hatley. (*Id.* ¶ 71.) Ali was never indicted, charged, or arrested, although he was suspended. (*Id.* ¶ 65.)

**B. False Administrative Disciplinary Charges**

According to Plaintiffs, on or about February 20, 2008, Defendant Karen Hornig, chief counsel for the BPD, in concert with Tuffy and Defendant Debbie Owens, all of whom were members of the Charging Committee of the BPD, approved internal administrative disciplinary charges against Plaintiffs and their supervisor, Robert Smith. (*Id.* ¶ 83.) Plaintiffs allege that Hornig, Tuffy, and Owens knew that the charges were false, and they knew that the charges were being filed beyond the one-year limitations period set forth in the Maryland LEOBR. (*Id.*) In fact, Plaintiffs contend that Defendant JoAnn Wilson-Branch, the trial board prosecutor, back-dated the charges to make them appear timely. (*Id.*) On February 25, 2008, the BPD filed administrative disciplinary charges against Plaintiffs. (*Id.* ¶ 84.) The BPD served the charges on

Nagovich on February 26, 2008; on Hatley and Shaffer on February 27, 2008; and on Ali on March 5, 2008. (*Id.* ¶¶ 93-95.)

These administrative disciplinary charges alleged that each Plaintiff had conducted himself in a manner unbecoming a member of the Baltimore Police Department on several occasions. First, on or about December 27, 2005, the Plaintiffs allegedly detained suspects named Anton Richardson and Lamont Robinson for violations of Maryland drug laws and then released both suspects without properly issuing Police/Citizen Contact Receipts or filing Miscellaneous Incident Reports with their supervisor. (*Id.* ¶ 86.) Second, on December 27, 2005, the Plaintiffs allegedly knew, as well as aided and abetted Officer Jemini Jones with the sexual assault of Dara Walker. (*Id.*) Third, from February to December 2005, Plaintiffs allegedly confiscated contraband from arrestees and detainees and failed to properly submit the items to the Evidence Control Section. Fourth, from July 18, 2005 to December 27, 2005, Plaintiffs allegedly observed a vial of cocaine above Officer Jones' desk with submission documents in the name of Jones and failed to take the initiative to submit the item to the Evidence Control Section. (*Id.*)

The trial board proceedings were scheduled for August 27, 2008 (*id.* ¶ 97), but on or about March 26, 2008, the BPD sent notifications to the plaintiffs indicating that the more serious internal disciplinary charges filed against them would be dropped (*id.* ¶ 98). By July 2008, the BPD informed Plaintiffs that the trial board hearings scheduled for August 27, 2008 were rescheduled for January 15, 2009. (*Id.* ¶ 100.) Plaintiffs were given no explanation for the delay, which also continued their suspended status for an additional four and one half months. (*Id.*) Plaintiffs allege that on or about October 21, 2008, Tuffy and Smith leaked certain

5

confidential and non-public information to the media regarding Plaintiffs, as demonstrated by news articles published on October 21 and 23, 2008. (*Id.* ¶ 103.)

## II. Standard of Review

A district court applies the same standard in evaluating a Rule 12(c) motion for judgment on the pleadings as it applies in evaluating a motion to dismiss pursuant to Rule 12(b)(6). *See Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, when ruling on a 12(b)(6) motion, the court assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Burbach Broad. Co.*, 278 F.3d at 405. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

## III. Discussion

The eleven counts in Plaintiffs' complaint can be grouped into three categories: violations of the LEOBR, due process violations, and invasion of privacy. Each category is considered in turn.

### A. Violations of LEOBR (Counts 1-3)

In Counts One through Three, Plaintiffs allege that Defendants violated the LEOBR because they did not file administrative disciplinary charges against Plaintiffs within the one-

year limitations period.³ Plaintiffs claim that they were suspended in late 2005 and early 2006,⁴ yet the administrative disciplinary charges were not filed against Plaintiffs until February 25, 2008 (Compl. ¶¶ 61, 65, 107, 117, 127, 140), clearly outside the one-year limitations period. Accordingly, Plaintiffs claim that Defendants violated the LEOBR.

Defendants argue that "the clear language of LEOBR only grants members recourse against the agency or department, not against individual members of the department." (Defs.' Mot. to Dismiss April 09, 2010 at 7.)⁵ Defendants are correct that the LEOBR provides an exclusive and self-contained procedure for the vindication of the rights granted within it: an application for show cause order. *See* Md. Pub. Safety Code Ann. § 3-105(a) ("A law enforcement officer who is denied a right granted by this subtitle may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted."); *see also Carroll v. City of Westminster*, 52 F. Supp. 2d 546, 562 (D. Md. 1999) ("Maryland courts have interpreted the LEOBR as an 'officer's exclusive remedy in matters of departmental discipline.'" (citing *Moats v. City of Hagerstown*, 324 Md. 519, 597 A.2d 972 (1991))).⁶ There is no implied

---

³ The LEOBR states "(a) Subject to subsection (b) of this section, a law enforcement agency may not bring administrative charges against a law enforcement officer unless the agency files the charges within 1 year after the act that gives rise to the charges comes to the attention of the appropriate law enforcement agency official." Md. PUB. SAFETY Code Ann. § 3-106(a) (LexisNexis 2010). Subsection (b) provides that this limitation on administrative charges provision "does not apply to charges that relate to criminal activity or excessive force." *Id.* § 3-106(b).
⁴ Specifically, Plaintiffs Nagovich, Hatley, and Shaffer were suspended on December 29, 2005 (Compl. ¶ 61), and Plaintiff Ali was suspended on January 6, 2006 (*id.* ¶ 65).
⁵ Defendants also argue that these claims are barred by res judicata (*see* Defs.' Mot. to Dismiss April 09, 2010 at 7), which was the basis of their first motion to dismiss (Defs.' Mot. to Dismiss May 06, 2009). This Court denied that first motion, finding that the dismissal of the earlier action in the Circuit Court for Baltimore City was based solely on the fact that the Baltimore City Police Department was improperly named as a defendant. The Circuit Court for Baltimore City did not decide the merits of the case. (Mem. and Order Den. Defs.' Mot. to Dismiss, June 9, 2009.) Defendants have not set forth any additional information that would alter this Court's ruling.
⁶ Plaintiffs are aware of this remedy, as demonstrated by the fact that they filed a show cause petition with the complaint in the earlier action against the BPD in the Circuit Court for Baltimore City. (*See* Ex. C, Defs.' Mot. to Dismiss April 09, 2010.) The Circuit Court for Baltimore City dismissed the petition. (Ex. A, Defs.' Mot. to Dismiss

private right of action for violations of the LEOBR. As a result, I will grant Defendant's Motion to Dismiss as to Counts One through Three of Plaintiff's Complaint.[7]

### B. Violations of Due Process

The majority of the Complaint alleges that Plaintiffs were deprived of their protected property and liberty interests without due process in violation of the Fourteenth Amendment to the United States Constitution[8] and Article 24 of the Maryland Declaration of Rights.[9] This Court construes Article 24 of the Maryland Declaration of Rights *in pari materia* with the Due Process Clause of the Fourteenth Amendment. *See Farmer v. Kavanagh*, 494 F. Supp. 2d 345, 371 (D. Md. 2007); *Canaj, Inc. v. Baker and Div. Phase III*, 893 A.2d 1067, 1097 (Md. 2006). The same analysis thus applies to the state constitutional claims as to the federal constitutional claims. *See Farmer* 494 F. Supp. 2d at 371.

Importantly, "in order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (internal citations omitted). Without such a showing, "the question of what process is

---

April 09, 2010.) Under the LEOBR, "a party aggrieved by a decision of a court under this subtitle may appeal to the Court of Special Appeals." §3-109(b). Plaintiffs did not do so. (Defs.' Mot. to Dismiss April 09, 2010 ¶ 7.)

[7] Importantly, however, a violation of the procedural rights granted by the LEOBR may still constitute a violation of procedural due process under Article 24 of the Maryland Declaration of Rights or the Fourteenth Amendment of the United States Constitution for which Plaintiffs seeks relief under 42 U.S.C. §1983. *See* 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §3573.2 (3d. ed. 2008) ("Obviously, §1983 does not allow vindication of purely state-created rights. The rights asserted must be secured by federal law. Sometimes, however, a violation of state law will work a violation of federal rights cognizable under §1983.") Therefore, the facts pertaining to the alleged LEOBR violations are relevant to the following section discussing alleged procedural due process violations.

[8] Section 1 of the Fourteenth Amendment decrees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

[9] Article 24 of the Maryland Declaration of Rights states "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Dec. of R. art. 24.

required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Id.* Because Plaintiffs' claims do not demonstrate that they have been deprived of a protected property or liberty interest, each of their due process claims must fail.

### 1. Procedural Due Process Violations (Counts 4-5, 8-9)

In Counts Four and Five, Plaintiffs claim that they have been deprived of a protected property interest in continued employment as active duty, sworn police officers under Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment. (Compl. ¶¶ 143, 144, 151, 152.) According to Plaintiffs, they have been deprived of this property interest because they have had their police powers suspended for nearly three years and have been suspended from active duty as sworn police officers for nearly three years. (*Id.* ¶¶ 145, 153.) Plaintiffs claim that they have been afforded insufficient process because the internal administrative disciplinary charges were filed against them beyond the one-year limitations period in the LEOBR. (*Id.* ¶¶ 146, 154.) Defendants respond that Plaintiffs' due process rights were not violated because Plaintiffs were not deprived of their property interests in employment as police officers. (Defs.' Mot. to Dismiss April 09, 2010 at 8.) Defendants claim that the Plaintiffs were employed and compensated by the BPD until the date of their trial board hearing and that they were afforded a hearing. (*Id.*)

In order to state a procedural due process claim, plaintiffs must demonstrate that (1) they had a property interest (2) of which defendants deprived them (3) without due process of law. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826 (4th Cir. 1995). Here, Plaintiffs claim that Defendants have deprived them of their property interest in employment as active police officers by causing their suspension for nearly three years. (*See* Compl. ¶¶ 143, 144, 151, 152.)

9

Unfortunately for Plaintiffs, "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services. . . . Rather, the property interest is more generally in continued employment, and no deprivation exists so long as the employee receives payment of the full compensation [for the position]." *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) (internal citation omitted); *see also City of Annapolis v. Rowe*, 123 Md. App. 267, 292 (Md. Ct. Spec. App. 1998) ("Thus, we join the Fourth Circuit and the large number of other federal and state courts that have held that an employee has a protected property interest only in the economic benefits of his or her employment and that an employee's property interest in his continued employment is properly safeguarded by payment of full salary and fringe benefits during his suspension."). Plaintiffs have not claimed that they have been deprived of the economic benefits of employment with the BPD, only that they have been suspended from active duty. (*See* Compl. ¶¶ 145, 153.)

In Counts Eight and Nine, Plaintiffs claim that they have been deprived of a liberty interest, in violation of the Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment, by the stigma of a three-year suspension. (*See* Compl. ¶¶ 178-186, 188-196.) According to Plaintiffs, Defendants leaked privilege and confidential information regarding false and defamatory charges, causing damage to Plaintiffs' reputations. (*Id.* ¶¶179-180, 189-190.) Plaintiffs contend that for three years they were deprived of a reasonable opportunity to respond to the charges in a hearing and clear their names. (*Id.* ¶¶ 181, 191.) Defendants respond that a violation based on reputation alone is insufficient to give rise to procedural protections under the due process clause of the Maryland Declaration of Rights or the Fourteenth Amendment. (Defs.' Mot. to Dismiss April 09, 2010 at 9.)[10]

---

[10] Defendants are correct that publication of stigmatizing charges alone, without damage to "tangible interests such as employment," does not invoke the due process clause. *Paul v. Davis*, 424 U.S. 693, 701 (1976). For a liberty

In order to state the claim that Defendants' conduct deprived Plaintiffs of a liberty interest in their "good name, reputation, honor or integrity," *see Holland v. Maryland*, 307 Fed. Appx. 746, 747 (4th Cir. 2009), Plaintiffs have to allege "facts tending to show that [their] superiors made charges against [them] that 'might seriously damage [their] standing and associations in [their] community' or otherwise 'imposed on [them] a stigma or other disability that foreclosed [their] freedom to take advantage of other employment opportunities,'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573-75, (1972)). Plaintiffs must also allege "that those charges were made 'public' by his employer, and that the charges were false." *Stone*, 855 F.2d at 173 (citing *Bishop v. Wood*, 426 U.S. 341, 348-49 (1976); *Codd v. Velger*, 429 U.S. 624, 627 (1977)).

Plaintiffs claim that the pending internal disciplinary charges, which have been covered by the media for nearly three years,

> have stigmatized Plaintiffs and have foreclosed employment opportunities for the Plaintiffs including, among other things, working in acting supervisory capacities in the BPD; working overtime hours in the BPD; securing gainful and meaningful secondary employment outside the BPD; transferring to other police agencies in the State of Maryland and outside the State of Maryland; and, getting employment with any public agencies within the City of Baltimore, State of Maryland or other public jurisdictions outside the State of Maryland.

(Compl. ¶ 182.) Moreover, Plaintiffs contend that during the nearly three years that they have been suspended, they have been "ordered to perform menial clerical tasks within the police

---

interest to have been implicated, some damage to Plaintiffs' employment status, such as discharge or significant demotion, must have occurred at the time of the alleged leak regarding the charges against Plaintiffs. *See Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988) ("We have required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be made in the course of a discharge or significant demotion." (internal quotation omitted)). Importantly, a "'significant demotion' may include the reassignment of an employee to a position outside his field of choice." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006). *But see Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1999) (finding that an employee's liberty interest was not implicated when the Department of Corrections publicly announced the reasons for the employee's demotion and transfer, but continued to employ him).

department that would normally be performed by civilian clerks, or police functions without police powers." (*Id.* ¶ 183.)

The administrative disciplinary charges against Plaintiffs include allegations that the Plaintiffs knew, as well as aided and abetted Officer Jemini Jones with the sexual assault of Dara Walker, and that Plaintiffs confiscated contraband from arrestees and detainees and failed to properly submit the items to the Evidence Control Section. (*See id.* ¶ 86.) Certainly, such charges have the potential to stigmatize Plaintiffs and foreclose employment opportunities both inside and outside the BPD. Plaintiffs claim that these charges have indeed damaged their reputations and resulted in the equivalent of a demotion, insofar as Plaintiffs have been ordered to perform "menial clerical tasks" during their suspension period and have been unable to exercise "police powers." (*See id.* ¶¶ 182-183.) Plaintiffs also claim that these administrative disciplinary charges are false. (*Id.* ¶¶ 83-84.)

Plaintiffs fail, however, to claim that these administrative disciplinary charges were made public by Defendants. *See Bishop v. Wood*, 426 U.S. 341, 348 (1976) ("Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his good name, reputation, honor, or integrity was thereby impaired.") (internal citation omitted). Plaintiffs contend that "the pending charges . . . have been extensively covered in the media for nearly three (3) years . . . ." (Compl. ¶¶ 182, 192.) Yet, though Plaintiffs include numerous excerpts from media articles concerning the Flex Squad in the Complaint, they fail to include an excerpt that mentions the administrative disciplinary charges against Plaintiffs. The closest is an excerpt from an article posted on WBALTV.com on January 13, 2006, stating that all six of the Flex Squad's officers were suspended during an internal investigation that was initiated after a grand jury indicted Officers Shaffer, Hatley, and Jones. (*See* Compl. ¶ 68.)

Providing the fact that officers have been suspended to the media is not equivalent to providing the details of the internal administrative disciplinary charges against Plaintiffs to the media. To the extent that Plaintiffs found the published information regarding their suspensions damaging to their reputations, it was not false information and therefore does not implicate Plaintiffs' liberty interests. *See Codd v. Velger*, 429 U.S. 624, 627 (1977).

Because Plaintiffs have failed to demonstrate that Defendants made the administrative disciplinary charges public and have failed to demonstrate the information that the BPD did make public was false, Plaintiffs have not stated a claim for deprivation of a liberty interest.

### 2. Substantive Due Process Violations (Counts 10-11)

In Counts Ten and Eleven, Plaintiffs claim that they have been deprived of their liberty and property interests under Article 24 of the Maryland Declaration of Right and the Fourteenth Amendment by Defendants' deliberate use of false or fabricated evidence against them. (Compl. ¶¶ 198-202, 215-216.) Indeed, there is a "right not to be deprived of liberty or property based on the deliberate use of evidence fabricated by or known to be false to a law enforcement official. . . . rooted in substantive due process." *White v. Wright*, 150 Fed. Appx. 193, 198 (4th Cir. 2005) The Fourth Circuit has "recognized that an officer who violates this right may be subject to civil liability." *Id.* However, vindication of this right requires that Plaintiffs first demonstrate a deprivation of liberty or property, which they have failed to do. *See supra* Part III.B.1.

### C. Invasion of Privacy (Counts 6-7)

In Counts Six and Seven, Plaintiffs claim that Defendants invaded their privacy by leaking confidential and non-public internal matters of the BPD involving Plaintiffs to the media, causing this information to be published, and causing Plaintiffs' embarrassment, emotional

13

distress, and the diminution of Plaintiffs' reputations. (Compl. ¶¶ 161-163, 168, 170, 173, 176.) Accordingly, Plaintiffs assert claims for intrusion upon seclusion and placing Plaintiffs in a false light. (*See id.* ¶¶ 166, 176.)

### 1. Intrusion Upon Seclusion

Intrusion upon seclusion has been defined as "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000). Intent is clearly required, as "'the tort cannot be committed by unintended conduct amounting merely to a lack of due care.'" *Bailer v. Erie Ins. Exchange*, 687 A.2d 1375, 1381 (Md. 1997) (citations omitted). Importantly, the intrusion itself is what gives rise to a cause of action for invasion of privacy, not the fact of publication. Restatement (Second) of Torts § 652B cmt. b (1977) ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.")

Here, the alleged "intrusion" was a lawful investigation following rape allegations. Plaintiffs do not object to the investigation conducted by the Sex Crimes Unit in late December 2005. (*See* Compl. ¶ 27.) Nor do Plaintiffs contend that the second search of the Flex Squad offices was unlawful. Plaintiffs do claim that a false affidavit was filed in order to obtain the search warrant for the second search (*id.* ¶¶ 34-40), but they concede that a search warrant was not legally necessary to search the Flex Squad offices, as there is no expectation of privacy in city-owned property (*id.* ¶ 29). Rather, Plaintiffs object to the alleged leaking of confidential information to the media. (*Id.* ¶¶ 161-162, 165.) That is, Plaintiffs object to the dissemination and publication of the information, not to the investigation that took place. The investigations of the Flex Squad offices were lawfully conducted after allegations of wrongdoing and therefore do

not amount to an intrusion that would be highly offensive to a reasonable person. *Cf. Bailer v. Erie Ins. Exch.*, 344 Md. 515 (Md. 1997) (employer videotaping au pair in the shower); *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497 (Md. Ct. Spec. App. 2005) (reporters entering an assisted living center uninvited and asking an elderly and frail Congressman questions about unpaid bills, despite the Congressman's repeated request that the reporters leave). Accordingly, Plaintiffs have not stated a plausible claim for intrusion upon seclusion.

   2. **False Light Invasion of Privacy**

To establish a meritorious claim for false light invasion of privacy, Plaintiffs must demonstrate "1) that the defendant gave 'publicity to a matter concerning another that places the other before the public in a false light,' 2) that 'the false light in which the other person was placed would be highly offensive to a reasonable person,' and 3) that 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Barnhart v. Paisano Publ'ns, LLC*, 457 F. Supp. 2d 590, 594 (D. Md. 2006) (citing *Bagwell v. Peninsula Regional Med. Ctr.*, 665 A.2d 297 (Md. App. 1995)). Truth of the statement is a complete defense. *Furman v. Sheppard*, 130 Md. App. 67, 77 (Md. Ct. Spec. App. 2000); *see also* Restatement 2d of Torts, § 652E cmt. a ("[I]t is essential . . . that the matter published concerning the plaintiff is not true.").

Plaintiffs claim that Defendants "falsely represented facts about Plaintiffs in a reckless manner," (Compl. ¶ 172), and "caused the release, dissemination, publicizing and publication of facts about Plaintiffs that placed them in a false light by attributing to them conduct and characteristics that were false," (*id.* ¶ 173). Yet, while Plaintiffs include numerous excerpts from the Baltimore Sun and WBALTV.com in the Complaint, they fail to point out exact passages that contain false information. The excerpts appear to state facts that are objectively true. For

example, the excerpts reveal that Shaffer and Hatley were indicted, arrest warrants were issued for them, and their bail was set at $100,000.00. (*Id.* ¶ 161.) Plaintiffs allege that these indictments and warrants were under seal and thus the information was confidential at the time it was published. (*Id.*) Publication of true, but confidential, information does not place Plaintiffs in a false light.

For the reasons stated above, Defendants' Motion to Dismiss is granted. A separate order effecting the ruling made in this memorandum is being entered herewith.


Date:   December 2, 2010			/s/                                    
						J. Frederick Motz
						United States District Judge